**UNITED STATES of America**

v.

**Wilfred Samuel BELL, Appellant.**

**No. 89–3026.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 21, 1989.

Decided June 15, 1990.

Pamela K. Chen (appointed by this court as co-counsel), with whom Henry W. Asbill (appointed by this court), and L. Barrett Boss, Washington, D.C. (appointed by this court as co-counsel), were on the brief, for appellant.

Leslie H. Blackmon, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Helen M. Bollwerk, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before EDWARDS, BUCKLEY, and WILLIAMS, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Wilfred Samuel Bell was convicted of distribution of cocaine and of conspiracy to possess and distribute cocaine and was sentenced to serve five to fifteen years in prison. Bell appeals the district court's denial of his motion to correct or reduce his sentence, arguing that the court improperly considered his failure to cooperate with the Government as a factor in determining his sentence and improperly rejected the justifications he offered for his noncooperation. As Bell's arguments are without merit, we affirm.

## I. BACKGROUND

Wilfred Bell was convicted, along with three codefendants, of distributing cocaine and conspiring to possess and distribute cocaine in violation of 21 U.S.C. §§ 841(a), 846. The evidence at Bell's trial, which lasted nearly two months, established that he was a participant in a nationwide conspiracy to import, possess, and distribute large amounts of cocaine throughout the United States and to conceal and launder the resulting profits. Bell was the conspiracy's main distributor for the Washington, D.C. area.

At a sentencing hearing on August 7, 1985, the district court heard the parties' allocutions. Arguing for a lenient sentence, Bell's counsel advised the court that he had wanted to plead guilty to the conspiracy count, but that the Government refused to accept his plea unless he agreed to cooperate with the Government in its investigation and prosecution of the conspiracy. According to counsel, Bell felt unable to cooperate with the Government for three reasons: first, he feared reprisals from underworld figures allegedly connected to certain members of the conspiracy; second, Bell did not believe that it was proper for him "to try to buy his way out of jail by taking other people down with him"; and third, he was concerned that he would unintentionally give inaccurate testimony because of the effects of his extensive cocaine use during the period in question. Sentencing Transcript ("Tr.") at 14–15. When Bell addressed the court on his own behalf, he stated:

> With regard to my offering to plead guilty to the conspiracy count, I did that from the first day we came to court.... It seems kind of old fashioned, but I'm not going to buy my freedom with somebody else's days to start with. I do not think that that is an honorable activity. I couldn't sleep at night if I did that.

*Id.* at 23. He then reiterated the two other reasons cited by his counsel for his refusal to cooperate. Bell also added that he had no information about the other conspirators that would have been helpful to the Government.

The district court dismissed Bell's "old fashioned" notion of honor as "misplaced loyalty." *Id.* at 37. The court also reject-

ed his claim that he had no knowledge concerning the extent of the conspiracy, finding this assertion incredible in view of the comprehensive, national scope of the drug distribution conspiracy and Bell's prominent position within that conspiracy as the major distributor for the Washington, D.C. area, as shown by the evidence at trial. In determining Bell's sentence, the court stated that it would have to consider the sentences given other defendants and the fact that some of Bell's co-conspirators had cooperated with the Government. *Id.* at 41–42. Bell was sentenced to two concurrent prison terms of five to fifteen years and fined $20,000.

On appeal, we affirmed Bell's conviction but found that the district court had failed to attach its findings as to certain disputed facts in the presentence report to the report that was forwarded to the Bureau of Prisons and the Parole Commission, as required by Fed.R.Crim.P. 32(c)(3)(D). *United States v. Tarantino*, 846 F.2d 1384, 1422 (D.C.Cir.), *cert. denied*, 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988). After the district court complied with this requirement, Bell moved the district court for correction and reduction of his sentence pursuant to Fed.R.Crim.P. 35(a) (as applicable to offenses committed prior to November 1, 1987). Bell argued that his sentence was illegal because the district court had erred both in considering his failure to cooperate with the Government as a factor in determining his sentence and in imposing an indeterminate sentence.

The district court denied Bell's motion, holding that consideration of Bell's refusal to cooperate with the Government was proper so long as his constitutional rights were not prejudiced. *United States v. Bell*, Crim. No. 83–320–12, Memorandum Opinion at 6–7 (D.D.C. Jan. 27, 1989) ("Mem. Op.") (citing *Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980)). The court reiterated its view that Bell's desire "not … to be labeled a stool pigeon" was not an acceptable reason for refusing to cooperate. *Id.* The court also indicated that it found incredible Bell's assertion that he had no helpful information to give. *Id.* at 7. Fi-

nally, the court stated that "if the distinction has any meaning in this Circuit, the Court did not 'enhance' Bell's sentence because of his refusal to cooperate, but denied him the benefit of any leniency otherwise accorded a defendant who cooperates." *Id.* The court also held that Bell's indeterminate sentence was permissible under 18 U.S.C. § 4205(b)(1) (1988) (as applicable to offenses committed prior to November 1, 1987) and required him to serve a minimum of five years before being eligible for parole. Mem.Op. at 7–8. Bell appeals from the denial of his motion.

## II. DISCUSSION

Bell argues that because he was not a "confessed participant" in the conspiracy, the district court's consideration of his noncooperation as a factor in determining his sentence effectively punished him for exercising his rights to a jury trial and to remain silent under the Fifth and Sixth Amendments; therefore, he was deprived of his right to due process of law. Bell also contends that the court erred in giving weight to his failure to cooperate without first determining whether Bell could have contributed to the Government's investigation, or whether his fear of mob retaliation was justified. We address these arguments in turn. (As we find it utterly devoid of merit, we will not address Bell's final claim, namely, that the court erred in sentencing him to an indeterminate rather than a definite term of imprisonment.)

### A. The Propriety of Considering Bell's Noncooperation

Neither the Sentencing Reform Act of 1984, 98 Stat. 2031, applicable to offenses committed after November 1, 1987, nor the pre-existing law under which Bell was sentenced placed any statutory limitations on the information concerning a convicted person's background, character, or conduct that a court might consider for the purpose of determining an appropriate sentence. 18 U.S.C. § 3661 (Supp. V 1987) (formerly codified at 18 U.S.C. § 3577). The procedures used in imposing sentence

must, however, comport with the requirements of the due process clause. *See United States v. Lemon*, 723 F.2d 922, 933 (D.C.Cir.1983).

In *Roberts*, 445 U.S. at 556–58, 100 S.Ct. at 1362–63, the Supreme Court held that consideration of a defendant's willingness to cooperate was a relevant and proper factor in the determination of an appropriate sentence. The Court stated that

gross indifference to the duty to report known criminal behavior remains a badge of irresponsible citizenship.

This deeply rooted social obligation is not diminished when the witness to crime is involved in illicit activities himself. Unless his silence is protected by the privilege against self-incrimination, ... the criminal defendant no less than any other citizen is obliged to assist the authorities.... Few facts available to a sentencing judge are more relevant [than a defendant's refusal to cooperate] to the likelihood that [a defendant] will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career, [and] the degree to which he does or does not deem himself at war with his society.

*Id.* at 558, 100 S.Ct. at 1363 (internal quotation marks omitted).

The defendant in *Roberts* was a confessed participant in a drug trafficking conspiracy and had pled guilty to related charges. *Id.* at 554, 100 S.Ct. at 1361. He, like Bell, contended (albeit on appeal) that his failure to cooperate with prosecutors, who sought information concerning his suppliers, was justified by legitimate fears of retaliation and self-incrimination and that the sentencing court essentially punished him for exercising his Fifth Amendment privilege against self-incrimination. *Id.* at 559, 100 S.Ct. at 1363. The Court found that while Roberts's contentions would have merited serious consideration if he had presented them to the sentencing court, his failure to do so precluded a finding that consideration of his failure to cooperate was constitutional error, because the "Fifth Amendment privilege against compelled self-incrimination is not self executing" and is deemed

waived if not invoked by the holder. *Id.* at 559–61, 100 S.Ct. at 1363–65. The Court did not directly address Roberts's fear-of-retaliation claim.

Two general rules may be derived from the Court's opinion in *Roberts*. First, consideration of a defendant's noncooperation does not itself violate the defendant's right to due process. *Id.* at 556–59, 100 S.Ct. at 1362–64. Second, a specific claim that a defendant's noncooperation was justified is waived if not presented to the sentencing court before sentencing. *Id.* at 559–61, 100 S.Ct. at 1363–65.

As in *Roberts*, Bell did not raise his constitutional arguments against consideration of his noncooperation at the sentencing hearing. Bell argues, however, that the rule in *Roberts* should not apply in this case because, unlike the defendant in *Roberts*, Bell had not confessed to participation in the conspiracy; rather, he had invoked his constitutional rights to a jury trial, to remain silent, and to have the Government prove its case against him beyond a reasonable doubt. He maintains that by giving consideration to his refusal to cooperate, the court effectively punished him for asserting these rights.

While there may be circumstances in which this argument could have merit—a question upon which we express no opinion—the facts surrounding the sentencing court's consideration of Bell's noncooperation preclude the acceptance of that argument in this case. The Government did not raise the issue of Bell's noncooperation as a reason for enhancing his sentence. Rather, Bell himself raised the issue during allocution. Thus, far from confronting a claim that he had refused to cooperate with an assertion that he had chosen instead to insist on his constitutional rights, Bell sought the leniency afforded a cooperative defendant. He did so by asserting that he had wanted to plead guilty to the conspiracy charge but that the Government refused to accept his plea unless he agreed to cooperate with the prosecution. Bell then sought to explain why he felt unable to cooperate. Having been invited, by Bell, to consider whether he was justified in not

cooperating, the court did so and concluded that his justifications were insufficient.

Moreover, it is clear from the record of the sentencing hearing that the district court did not "enhance" Bell's sentence as "punishment" for his exercise of constitutional rights; it simply set his sentence with reference to the nature of his crime and in comparison with the sentences meted out to co-conspirators who had assisted the prosecution. *See* Tr. at 41–42. In other words, Bell, who did not cooperate, received a longer sentence than some of his co-conspirators who had cooperated. *Roberts*, however, clearly establishes the constitutional propriety of the statutorily recognized practice of allowing a person's sentence to vary depending on whether he has cooperated. *See* 445 U.S. at 556–59 & n. 4, 100 S.Ct. at 1362–64 & n. 4; 18 U.S.C. § 3553(e) (1988) (a court may impose a more lenient sentence "to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense"). The district court's consideration of the fact that Bell had declined to cooperate was therefore proper.

## B. Justifications for Noncooperation

On appeal, Bell recited the three justifications for noncooperation he had given in his allocution (fear of mob reprisals, belief that it would be wrong to "buy" leniency by implicating others, and a fear that any testimony would be unreliable). The district court dismissed these in the following terms:

> The Court fully considered the reasons proffered by Mr. Bell at sentencing for his refusal to cooperate, and one reason in particular stands out to the Court now as it did then, when Mr. Bell stated: "It seems kind of old fashioned but I'm not going to buy my freedom with someone else's days to start with. I do not think that is an honorable activity. I couldn't sleep at night if I did that." And the Court felt then as it feels now that his refusal to cooperate thus reflected a "misplaced loyalty." How it is not "honorable" to aid the Government in detec-

tion and prosecution of serious crimes . . . is beyond the Court.

Mem.Op. at 6–7. The court also observed that it could not credit his assertion that he did not have information of potential help to the Government. Bell nevertheless asserts that the court erred in considering the fact of noncooperation because it failed to find him capable of providing the prosecution with useful information, and refused to inquire into the veracity of his claim that he had a reasonable fear of mob reprisals.

We believe the court was justified in dismissing Bell's reasons for noncooperation. His adherence to a perverted code of honor is unacceptable on its face. Nor can we quarrel with the court's conclusion that Bell, who had been found guilty of playing a major role in a nationwide drug-distribution conspiracy on the basis of evidence adduced in a two-month trial, could not credibly claim to have *no* information about his co-conspirators that would be of interest to the prosecution. Finally, the reasons given by Bell at his allocution for fearing mob reprisals were too tenuous to command serious attention. *See* Tr. at 15, 16–17, 24. As the Supreme Court stated in *Roberts*, "[i]f we were to invalidate petitioner's sentence on the record before us, we would sanction an unwarranted interference with a function traditionally vested in the trial courts." 445 U.S. at 561, 100 S.Ct. at 1364.

## III. CONCLUSION

Bell's sentence was not enhanced as punishment for the exercise of any of his constitutional rights. Rather, he simply received a longer sentence than some of his co-conspirators because, unlike them, he chose not to cooperate with the Government's investigation and prosecution of the conspiracy. Moreover, the district court properly rejected the justifications proffered by Bell. The district court's denial of Bell's motion for correction and reduction of sentence is therefore

*Affirmed.*